**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
CONSERVE SOUTHWEST                         )
UTAH, *et al.*,                            )
                                          )
          Plaintiffs,                      )
                                          )
     v.                                    )          Civil Action No. 21-1506 (ABJ)
                                          )
U.S. DEPARTMENT                            )
OF THE INTERIOR, *et al.*,                 )
                                          )
          Defendants.                      )
_____   )

**<u>ORDER</u>**

Pending before the Court is the motion filed by intervenor-defendant Utah Department

of Transportation and joined by intervenor-defendant, Washington County, Utah, to transfer the

action to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).

Intervenor-Def.'s Mot. to Transfer Venue to the District of Utah [Dkt. # 26] ("Mot."); Mot. for

Joinder of Washington County in Mot. [Dkt. # 27] ("Joinder"); Min. Order (Oct. 14, 2021)

(granting joinder motion).  Plaintiffs and the federal defendants in this action – the United States

Department of the Interior ("Interior"), the United States Bureau of Land Management ("BLM"),

and the United States Fish and Wildlife Service ("FWS") – oppose the motion to transfer.  *See*

Federal Defs.' Opp. to Mot. [Dkt. # 31] ("Fed. Defs.' Opp."); Pls.' Mem. of P. & A. in Opp. to

Mot. and Joinder [Dkt. # 32] ("Pls.' Opp.").[1]  After reviewing the record and assessing the

applicable factors, many of which are largely neutral, the Court will deny the motion to transfer in

_____

[1]    The Utah Department of Transportation filed a reply in support of its motion to transfer
venue on November 24, 2021.  Intervenor-Def. Utah Department of Transportation's Reply Br. in
Supp. of its Mot. [Dkt. # 33] ("Reply").

its discretion.  While Utah has an undeniable stake in the proceedings, the fact that it would be an equally suitable venue does not outweigh the deference to be accorded to the plaintiffs' choice of forum, particularly when three of the defendants oppose transfer as well.

## BACKGROUND

On January 13, 2021, then-Secretary of the Interior David Bernhardt approved a right-of-way for the construction and maintenance of a new four-lane highway ("Northern Corridor Highway") through the Red Cliffs National Conservation Area ("NCA"), which was designated by Congress in 2009 to "conserve, protect, and enhance for the benefit and enjoyment of present and future generations the ecological, scenic, wildlife, recreational, cultural, historical, natural, educational, and scientific resources of the National Conservation Area," 42 U.S.C. § 460www(a)(1), and to protect "each" endangered or threatened wildlife species located within it.  *Id.* § 460www(a)(2).  Am. Compl. ¶¶ 1, 3, 32, 140.  The Red Cliffs NCA serves, among other things, as the critical habitat for the Mojave desert tortoise, which has been designated as a "threatened species" under the Endangered Species Act.  Am. Compl. ¶ 79.

Secretary Bernhardt also approved two land use plan amendments – the Red Cliffs NCA Resource Management Plan Amendment and the St. George Field Office Resource Management Plan Amendment – so that the Northern Corridor Highway could be placed across roughly 2.37 miles of federal public land.[2]  Am. Compl. ¶¶ 3, 108, 140.  Around the same time, FWS issued two biological opinions and Incidental Take Statements, as well as an Incidental Take Permit,

---

2      Plaintiffs first alleged that Secretary Bernhardt approved the issuance of a right-of-way and the land use plan amendments on January 15, 2021, *see* Am. Compl. ¶ 3, and later that this occurred on January 13, 2021.  *See* Am. Compl. ¶ 140.  It appears that January 13, 2021 is the date plaintiffs intended to use; in their opposition to the motion to transfer venue, they write that "[t]he Secretary of the Interior signed the ROD on January 13, 2021."  Pls.' Opp. at 15.

which set a limit on the amount of permissible incidental take of Mojave desert tortoise, paving the way for the highway's construction.[3]  Am. Compl. ¶¶ 4, 9.

The federal government's approval of the Northern Corridor Highway right-of-way followed years of planning by state and federal agencies.  On September 18, 2018, the Utah Department of Transportation applied for a right-of-way grant from BLM, so that the highway could be located in the Red Cliffs NCA.  Am. Compl. ¶ 104.  After publishing its notice of intent to prepare an Environmental Impact Statement to consider the Utah Department of Transportation's application, BLM received 17,258 submissions from the public, including from plaintiffs.  Am. Compl. ¶ 105.  In June 2020, BLM and FWS issued a Draft Environmental Impact Statement, which received nearly 15,500 public comments raising concerns over the impacts of the proposed highway.  Am. Compl. ¶¶ 106, 111.  And finally, in November 2020, BLM and FWS issued the Final Environmental Impact Statement for the project.  Am. Compl. ¶ 117.  During 2020, Washington County, Utah was simultaneously working to approve a Habitat Conservation Plan for the Mojave desert tortoise.  Am. Compl. ¶¶ 143–44.  Around January 2021, Washington County applied to FWS for an Incidental Take Permit that would "authorize take of the desert tortoises for an additional term of 25 years."  Am. Compl. ¶ 143.

On January 12, 2021, FWS issued a Biological Opinion and Incidental Take Statement for the project, which according to plaintiffs, "conclude[ed] that constructing, operating, and maintaining . . . [the] Northern Corridor right-of-way [would] not jeopardize the continued

---

3      Under the Endangered Species Act, a "biological opinion" is defined as "the document that states the opinion of the [FWS] as to whether or not the Federal action is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat," and "incidental take" is defined as "takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant." 50 CFR § 402.02.

existence of Mojave desert tortoise or . . . [its] critical habitat."  Am. Compl. ¶ 160.  Then on January 13, 2021, FWS issued and approved Washington County, Utah's Incidental Take Permit.  Am. Compl. ¶ 158.  That same day, Secretary Bernhardt signed a Record of Decision ("ROD"), which identified and discussed the factors that Interior considered in reaching its decision, and also approved both the amendments to the two resource management plans and the issuance of a right-of-way to construct the highway.  Am. Compl. ¶¶ 43, 140.

On June 3, 2021, plaintiffs, the non-profit organizations Conserve Southwest Utah, Conservation Lands Foundation, Inc., Center for Biological Diversity, Defenders of Wildlife, Southern Utah Wilderness Alliance, The Wilderness Society, and WildEarth Guardians, filed a complaint against Interior and BLM.[4]  Compl. [Dkt. # 1].  Plaintiffs amended their complaint on July 27, 2021, adding FWS as a defendant.  First Am. Compl. [Dkt. # 16] ("Am. Compl.") ¶ 29.  Plaintiffs bring their claims under the Omnibus Public Land Management Act of 2009, Pub. L. No. 111-11, 123 Stat. 991, including the provision establishing the Red Cliffs NCA, 16 U.S.C. § 460www *et seq.*, the Land and Water Conservation Fund Act of 1964, 54 U.S.C. §§ 200301–10, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the National Historic Preservation Act, 54 U.S.C. §§ 300101–320303, the Endangered Species Act, 16 U.S.C. §§ 1531–44, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–06.  Am. Compl. ¶¶ 27–64.

---

4        Two plaintiffs are headquartered in Washington, D.C.:  Defenders of Wildlife, and The Wilderness Society.  Am. Compl. ¶¶ 18, 20.  Three plaintiffs are headquartered in other states and also maintain offices in Washington, D.C.:  Conservation Lands Foundation, Inc. (headquartered in Durango, Colorado), Center for Biological Diversity (headquartered in Tucson, Arizona), and Southern Utah Wilderness Alliance (headquartered in Salt Lake City, Utah).  Am. Compl. ¶¶ 16, 17, 19.  Two plaintiffs are headquartered in other states and do not maintain offices in Washington, D.C.:  Conserve Southwest Utah (headquartered in St. George, Utah), and WildEarth Guardians (headquartered in Santa Fe, New Mexico).  *See* Am. Compl. ¶¶ 15, 21.

On July 27, 2021, the Court granted the motions of Washington County, Utah and the Utah Department of Transportation to intervene as defendants in this action. Order (July 27, 2021) [Dkt. # 15]; *see* Mot. to Intervene by Washington County, Utah [Dkt. # 4]; Mot. to Intervene by Utah Department of Transportation [Dkt. # 5]. A little over two months later, on October 6, 2021, the Utah Department of Transportation filed a motion to transfer venue. *See* Mot. Together with Washington County, Utah, it argues that the case should be transferred to the District of Utah because that is the "controversy's home:"

> where the challenged road will be built; where the permittees that planned the road and the residents that will benefit from it reside; where the species, lands and resources Plaintiffs alleged will be harmed are located; and where the Washington County residents most keenly interested in this litigation are located.

Mot. at 1. The intervenor-defendants assert that the venue for this action is more properly located within the District of Utah for a number of reasons:

- The Northern Corridor Highway project "was initiated in Southwest Utah and has been evaluated through the local agency representatives in Utah in context of local BLM land use planning requirements." *Id.* at 4.

- "UDOT applied to the BLM St. George Field Office for a right-of-way grant for the Northern Corridor highway . . . ." *Id.*

- "Washington County submitted an amended Habitat Conservation Plan . . . application to the FWS Utah Ecological Services Office for an [Incidental Take Permit] . . . ." *Id.*

- "After UDOT submitted the application and before the NEPA process began, UDOT coordinated regularly with BLM Utah staff to develop the Northern Corridor Project . . . . This regular coordination included monthly meetings, starting in August 2018, between UDOT, Utah BLM, and Utah FWS staff, as well as Washington County representatives." *Id.* at 5.

- "The BLM and FWS's entire scoping process was conducted through the agencies' Utah Offices." *Id.*

- "Publications and notices related to the environmental review of the Northern Corridor Project and Washington County's Amended [Habitat

Conservation Plan] [were] released by the local and regional offices, not agency headquarter[s] staff based in Washington, D.C." *Id.*

- "In November 2020, the [Final Environmental Impact Statement], Amended [Habitat Conservation Plan], [Incidental Take Permit] for the Mojave Desert Tortoise, and Proposed [Resource Management Plan] Amendments were signed by Gregory Sheehan, State Director for BLM Utah, along with Noreen Walsh, the Regional Director of FWS Region 6 (who also signed the [Draft Environmental Impact Statement])." *Id.* at 6.

- "[A]ll of the BLM staff who prepared the [Final Environmental Impact Statement] [were] based in BLM's Utah offices. . . . The FWS staff who helped prepare [it] were all based out of FWS' Utah Field Office, or the FWS Mountain-Prairie Regional Office, which encompasses eight states including Utah." *Id.* at 7.

- "[S]tate and local officials [in Utah] engaged in the NEPA process," including the Governor of Utah. *Id.*

- "Although the ROD was signed in Washington, D.C[.], . . . all of the scoping, public meetings, and Project and alternative development for the [Final Environmental Impact Statement] and ROD were conducted in Utah by Utah-based state, local, and federal agency staff." *Id.*

- "The underlying biological opinions, [Incidental Take Statements, and Incidental Take Permit] in this matter were issued to local Utah entities, not parties in Washington, D.C." *Id.* at 8.

- "BLM and FWS staff in Utah worked collaboratively with state and local agencies to ensure that the Utah public had opportunities to comment on and participate in the Project planning process. . . . All public meetings . . . were hosted by local BLM and FWS staff in St. George, Utah. . . . All public comments regarding the Project were directed to the BLM St. George field office." *Id.* at 8–9.

## LEGAL STANDARD

A court has "broad discretion" to transfer a case under section 1404, *In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983); *see* 28 U.S.C. § 1404(a), and the defendant, as the moving party, bears the burden of establishing that transfer is merited. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). In reaching a decision to transfer, the court should complete an "individualized, case-by-case consideration of convenience and fairness."

6

*Rossville Convenience & Gas, Inc. v. Barr*, 453 F. Supp. 3d 380, 385 (D.D.C. 2020), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

A case may be transferred from an otherwise proper venue "to any other district or division where it might have [originally] been brought,""[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  A threshold inquiry on a motion to transfer, then, is whether the claim may have been brought in the transferee forum.  *See* 28 U.S.C. § 1404(a).  In a suit based on federal question jurisdiction, venue is proper in any judicial district where (1) "a defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated;" or (3) a "plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1).

If the proposed transferee venue is also proper, the court must determine whether transferring the case is in the interest of justice by weighing a number of public and private factors. *See W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 356 (D.D.C. 2017); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  There are six private factors, including: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) convenience to the parties; (5) convenience to the witnesses, including whether witnesses are unavailable to give live trial testimony in one of the districts; and (6) the ease of access to evidence. *See Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 102 (D.D.C. 2009).  Public interest factors include: (1) the transferee court's familiarity with the governing law; (2) the transferee and transferor courts' congestion; and (3) the local interest in deciding the controversy where the event(s) occurred.  *See id.* at 103; *see also United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 78 (D.D.C. 2011).  In reaching a determination based on these private and public interest factors, the burden is on the defendant to show that a transfer is warranted.  *See Levin v. Majestik*

*Surface Corp.*, 654 F. Supp. 2d 12, 15 (D.D.C. 2009); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

## ANALYSIS

### I.    Threshold Inquiry

This action could have been brought in the District of Utah.  Two of the plaintiffs, Conserve Southwest Utah and Southern Utah Wilderness Alliance, are headquartered in Utah, *see* Mot. at 13; Pls.' Opp. at 3; Am. Compl. ¶¶ 15, 19, and so, reside in that district.  28 U.S.C. § 1391(e)(1); *id.* § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business[.]").  Further, "a substantial part of property that is the subject of the action is situated" in Utah, *id.* § 1391(b)(2), given the location of the proposed highway.

Plaintiffs do not argue that venue is improper in the District of Utah.  *See generally* Pls.' Opp.  However, just because a case *can* be brought in one venue does not necessarily mean that it was not properly brought in another.  A plaintiff is not required to "bring suit in the district where the most substantial portion of the relevant events occurred," *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006); courts are directed to undertake a "common sense appraisal" of the "events having operative significance in the case," *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978), to determine where venue is proper.

The finding that venue would be proper in Utah as well brings the Court to the consideration of the private and public interest factors.

II.    **Private Interest Factors**

With respect to the first private interest factor, courts generally give deference to the plaintiff's decision to bring a case in a particular venue.  *See Rossville*, 453 F. Supp. 3d at 387, quoting *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955).  That deference may be overcome, however, when it is "misplaced under circumstances . . . in which the substantive acts relevant to the suit occurred elsewhere and the plaintiff's choice of forum lack[s] meaningful ties to the parties, facts[,] and claims in the suit."  *Poindexter v. D.C. Dep't of Corr.*, 892 F. Supp. 2d 104, 107 (D.D.C. 2012).

A plaintiff's choice of forum warrants deference when it is plaintiff's home forum.  *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011).  That is partially the case here: "two Plaintiffs are residents in this District, and three others have offices in the District of Columbia."  Pls.' Opp. at 12; *see* Am. Compl. ¶¶ 16–20; *The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 14–15 (D.D.C. 2000) (finding that plaintiff's choice of forum was "entitled to substantial deference" where "[f]our of the plaintiffs [were] headquartered in Washington, D.C. and two other [had] offices [t]here"); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) (finding there was "a strong presumption in favor of the chosen forum" where "[o]f the five plaintiffs that filed suit . . . at least one . . . has its headquarters in the District of Columbia, and is thus clearly a resident of this District").

Further, the substantive acts relevant to plaintiffs' action arose both in Utah and in Washington, D.C.  The Northern Corridor Highway will be located in Washington County, Utah, Mot. at 1, and plaintiffs acknowledge that "portions of the administrative process occurred in Utah."  Pls.' Opp. at 16; *see also* Mot. at 13–14 ("[T]he reviews, analyses, scoping, development, and planning that culminated in the ROD occurred in Utah by Utah-based staff.").  But plaintiffs

also point out that Secretary Bernhardt authorized construction of the Northern Corridor Highway

by signing the ROD and also approved two land use plan amendments to allow the highway onto

federal public lands from Washington, D.C. Pls.' Opp. at 3, 13–14; *see also* Mot. at 7 ("Secretary

David Bernhardt signed the Northern Corridor ROD . . . in Washington, D.C. . . . ."); Fed. Defs.'

Opp. at 2 ("[I]t is also significant that then-Secretary Bernhardt signed the memorandum resolving

the protests to BLM's amendments to the Resource Management Plans . . . . [T]hen-Secretary

Bernhardt also chose to exercise his authority to approve and sign the BLM Record of Decision

challenged here rather than allow one of his subordinate officers to do so."). Plaintiffs' choice of

forum, thus, cannot be said to lack *any* meaningful connection to the decisions challenged in this

case, and so, the first factor weighs in favor of plaintiffs.[5]

      The remaining five factors do not weigh heavily in favor of transfer.

      The second private factor gives some weight to defendants' choice of forum. *See Ngonga*

*v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (according defendant's choice of forum "some

deference" when other interests favor transfer and when plaintiff's choice does not receive the

usual deference). "In Administrative Procedure Act . . . cases, a defendant's choice of forum

---

5     This is not a case where the named agency official was not "personally involved" in the challenged action. *See, e.g.*, *MVP Sports, Inc. v. Cissna*, No. 19-cv-00742, 2020 WL 5816239, at *2 (D.D.C. Sept. 30, 2020), quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009); *see also Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *6–7 (D.D.C. July 23, 2007). For example, BLM's Protest Resolution Report, which addressed protests to the right-of-way, specified that "the *Secretary* and his staff completed an independent evaluation of the proposed Protest Resolution Report and ROD," that the Secretary then "approved this Protest Resolution Report and issued a written decision to protesting parties," and that the decision was "the final decision of the Department of the Interior." Protest Resolution Report for the Proposed Resource Management Plan Amendments, Washington County, Utah, relating to the Proposed Northern Corridor Highway Right-of-Way (Jan. 13, 2021), https://www.blm.gov/sites/blm.gov/files/docs/2021-01/Northern%20Corridor%20PRMPAs%20and%20FEIS%20Protest%20Resolution%20Report%20%28January%2013%2C%202021%29.pdf.

deserves 'some weight' where the harm from a federal agency's decision is felt most directly in the transferee district." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015), citing *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46–47 (D.D.C. 2006). But here, it is only the intervenor-defendants – the Utah Department of Transportation and Washington County, Utah – that seek to transfer the case to Utah. The federal defendants, who make up three of the five defendants in this case, oppose the motion, emphasizing that "[i]n light of the Secretary's involvement, Intervenor-Defendant's motion to transfer venue should be denied." Fed. Defs.' Opp. at 2. So the intervenor-defendants' choice only weighs slightly in favor of transferring the case, if at all.

The third factor, where the claim arose, assesses the locus of the complaint, *Miller*, 608 F. Supp. 2d at 102, and encompasses not only where the relevant acts took place, but also any harm arising from the federal agency's decision, and where that harm will be felt. Plaintiff's suit is based on decisions made in both Utah and Washington, D.C., with respect to the proposed highway in Utah. *See* Am Compl. ¶¶ 2, 66, 105–11. The intervenor-defendants maintain that because "[t]he Northern Corridor will be located in Southwest Utah," the third factor "strongly argues in favor of transfer." Mot. at 16. It is true that environmental, financial, and other practical impacts of the highway will affect the local community. Plans for the North Corridor Highway were made by local and federal government officials based in Utah, and the construction and operation of the highway will take place exclusively in Southwest Utah. But that does not mean that the impact will only be felt in Utah.

The Northern Corridor Highway would cross through federal public lands, and, according to plaintiffs, through the critical habitat of the Mojave desert tortoise. Am. Compl. ¶¶ 1–3. Therefore, "this is an issue regarding the critical habitat of an endangered species whose vitality is

as much a national concern as it is a local concern." *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008). So this factor does weigh in the intervenor-defendants' favor to some extent, but there are aspects of the case that make the District equally appropriate.

Plaintiffs' claims do not arise under local or state laws; they arise under several federal environmental laws, including the Omnibus Public Lands Management Act, the Land and Water Conservation Act of 1965, the National Environmental Policy Act, the National Historic Preservation Act, and the Endangered Species Act, Am. Compl. ¶¶ 168–213; *see also* Am. Compl. ¶¶ 5, 26, which are all subject to review under the Administrative Procedure Act. *See* 5 U.S.C. § 702 *et seq.* While simply bringing claims under federal environmental laws might not be enough to anchor venue in the District of Columbia, *see, e.g.*, *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54–55 (D.D.C. 2012), here, Secretary Bernhardt was also personally involved in the underlying decision that impacted the land in Utah. Courts routinely deny motions to transfer from the District of Columbia when agency heads are involved in the underlying decision that impacted the land outside the district. *See, e.g.*, *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128–29 (D.D.C. 2001) ("[B]ecause both of the plaintiffs' counts focus on interpretation of federal statutes, and because federal government officials in the District of Columbia were involved in the decision [at issue], this case has some national significance and has a nexus to the District of Columbia."); *The Wilderness Soc.*, 104 F. Supp. 2d at 14 ("Secretary [of the Interior] Babbitt's heavy involvement thus highlights the significance of this issue to the entire nation."); *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 178 (D.D.C. 2009) ("[T]he high degree of involvement of officials outside of Arizona indicates that the validity of the determination carries significance beyond Arizona."); *see also*

Pls.' Opp. at 1–2 (citing cases).  Thus, even though much of the claim arose or will be felt in Utah, the claim also arose in Washington, D.C., and this factor is neutral.

Factors four, five, and six require a fact-specific analysis of the nexus between the parties, witnesses, and evidence in the action.  *Miller*, 608 F. Supp. 2d at 102.  Five out of seven plaintiffs are either headquartered in or have offices located in Washington, D.C.  Am. Compl. ¶¶ 15–21. Three of the five defendants, the federal agencies named in the lawsuit, are also based in Washington, D.C.  Am. Compl. ¶ 14.  But the location of witnesses and access to evidence are generally irrelevant in APA claims, which are often based only on the administrative record and resolved on summary judgment based on the administrative record.  *See Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013); *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 7 (D.D.C. 2013) ("[These] two factors are less relevant to the transfer inquiry where the case involves judicial review of an administrative decision, and where the case will be decided on the basis of the administrative record, without discovery or in-court testimony.") (internal citation, quotation marks, and alterations omitted); *Mashpee Wampanoag Tribe v. Zinke*, No. 18-cv-2242 (RMC), 2019 WL 2569919, at *7 (D.D.C. June 21, 2019).

When weighed together, the private factors indicate that a transfer to the District of Utah would not move the case to a venue with a more significant nexus to the case.

## III.    Public Interest Factors

The public interest factors go to the heart of concerns over "systemic integrity and fairness."  *Stewart Org., Inc.*, 487 U.S. at 30.  The most important question is whether "the controversy is, in its essence, a local dispute."  *Tidwell*, 306 F. Supp. 3d at 360.  The first and second public interest factors do not weigh heavily in this analysis, and the third factor – the local

interest in deciding the controversy – bears on the motion, but is not sufficiently weighty to be determinative.

The first public interest factor looks at the familiarity of the transferee court with the governing law. *Miller*, 608 F. Supp. 2d at 103. Plaintiffs have brought claims under federal law. The proposed transferee court is as familiar with the governing law for federal claims as this court. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003), quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987). The parties agree that all federal district courts are equipped to address questions of federal environmental law. *See* Mot. at 21; Pls.' Opp. at 19. This factor is therefore neutral.

The second factor compares the congestion of the transferor and transferee courts, although this distinction is not afforded much weight. *See Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 315 (D.D.C. 2015) (noting the factor is neutral absent a showing of "substantially more" congestion). Time from filing to trial and time from filing to disposition are the two relevant metrics. *See Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010).[6] As of June 30, 2022, the median time from filing to disposition for civil cases was 5.7 months in the District of Columbia, as compared to 12.2 months in the District of Utah. *See* Natl. Jud. Caseload Profile. The median time from filing to trial for civil cases was also shorter

---

6      Plaintiffs also point to the difference in the number of pending cases between the two districts: as of September 30, 2020, "the District of Utah had 527 cases pending per judge, versus 373 in the District of Columbia." Pls.' Opp. at 19. The intervenor-defendants note that these numbers are "both well below the national average," and that "[n]either court is particularly congested." Reply at 13. As of June 30, 2022, there were 526 cases pending per judge in the District of Utah, and 401 cases pending per judge in the District of Columbia. United States District Courts, *National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Aug. 24, 2022) ("Natl. Jud. Caseload Profile"). Across all federal district courts, there were 1,058 cases pending per judge on average. *Id.*

in the District of Columbia at 55.9 months, as compared to 70 months in the District of Utah. *Id.* Based on these numbers, this factor weighs against transfer to the District of Utah, but only slightly.

The third and final public interest factor is the local interest in deciding local controversies at home. Utah undoubtedly has a local interest in adjudicating this controversy; the proposed location of the highway is in Utah and many of the underlying events took place there. But these facts do not compel a transfer because this is not a purely local dispute: there is a national interest in protecting the habitat of an endangered species and in the proper administration of environmental laws and the other statutes at issue here. *See Otay Mesa Prop. L.P.*, 584 F. Supp. 2d at 126. Given plaintiffs' allegations, the Court cannot conclude that the District of Columbia, where the plaintiffs do their work, does not also have an interest in resolving the claims.

**CONCLUSION**

In considering the private and public interest factors, the Court finds that multiple factors are either neutral or do not weigh in favor of transfer. Because the intervenor-defendants have not met their burden to demonstrate that the facts warrant a transfer, their motion to transfer is **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: September 7, 2022