**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| CONSERVE SOUTHWEST ) | |
| UTAH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 21-1506 (ABJ) |
| ) | |
| U.S. DEPARTMENT ) | |
| OF THE INTERIOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

<u>**MEMORANDUM OPINION**</u>

A set of non-profit environmental and wildlife conservation organizations, plaintiffs Conserve Southwest Utah, Conservation Lands Foundation, Inc., Center for Biological Diversity, Defenders of Wildlife, Southern Utah Alliance, and Wildearth Guardians, brought this action in 2021 against the United States Department of Interior and two of its constituent agencies. They challenge a decision granting a right-of-way to the Utah Department of Transportation for construction of a new highway through the Red Cliffs National Conservation Area in southwest Utah, a critical habitat for the Mojave Desert tortoise. Compl. [Dkt. # 1]. The Amended Complaint, [Dkt. # 16] ("Am. Compl."), asks the Court to declare the Record of Decision approving the right-of-way, as well as related amendments to two resource management plans and an incidental take permit involving the tortoise issued to Washington County, Utah, to be arbitrary and capricious and in violation of law, and to vacate them and enjoin their implementation. Am. Compl. ¶¶ 168–213.

On May 22, 2023, the Department of the Interior, United States Bureau of Land Management, and United States Fish and Wildlife Service (the "Federal Defendants") filed a

motion for remand with partial vacatur. *See* Federal Defs.' Mot. For Voluntary Remand [Dkt. # 53] ("Mot."). They ask the Court to remand and vacate the right-of-way and to remand, but not vacate, the amended resource management plans and incidental take permit. *Id.* at 26. Plaintiffs support the Federal Defendants' request. *See* Pls.' Resp. in Supp. of Federal Defs.' Mot. [Dkt. # 67] ("Pls.' Resp."). The Intervenor-Defendants – the Utah Department of Transportation and Washington County, Utah ("Intervenors") – oppose the motion, and they urge the Court to proceed to summary judgment instead. *See* Intervenor-Def. Utah Dep't of Transp. Opp. to Mot. [Dkt. # 57] ("UDOT Opp."); Opp. of Intervenor-Def. Washington Cnty, Utah to Mot. [Dkt. # 58] ("Cnty Opp."). For the reasons stated below, the Court will grant the motion in part and deny it in part: the case will be remanded to the agencies, but the challenged right-of-way will not be vacated.

## BACKGROUND

The Mojave Desert tortoise, a species of slow-moving reptile, makes its home across the southwestern United States and northwest Mexico, including portions of Washington County, Utah in the southwest corner of the state. Unfortunately for the desert tortoise, various phenomena have historically challenged its existence. *See* Am. Compl. ¶¶ 75–77. Recognizing these circumstances, in 1990, the U.S. Fish and Wildlife Service ("FWS") deemed the species "threatened" under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, thereby triggering a series of obligations under federal law for the tortoise's protection and propagation. *See* Endangered and Threatened Wildlife and Plants; Determination of Threatened Status for the Mojave Population of the Desert Tortoise, 55 Fed. Reg. 12178, 12178–191 (Apr. 2, 1990), codified at 50 C.F.R. § 17.11(h) tbl.

Because it houses the desert tortoise,[1] and to avoid liability for the "take"[2] of a threatened species under the ESA, Washington County adopted a habitat conservation plan in 1995 to guide the management of the tortoise's habitat within its borders.  *See* Am. Compl. ¶ 90; Cnty Opp. at 2. The principal element of the 1995 plan was the creation of the Red Cliffs Desert Reserve ("Reserve").  Am. Compl. ¶ 91; Cnty Opp. at 2.  On the basis of the 1995 plan and Washington County's efforts, FWS issued the County a twenty-year incidental take permit in 1996, which allowed it to "take" a certain number of tortoises, acres of tortoise habitat, and acres of potential tortoise habitat for the purpose of development within the County.  Cnty Opp. at 3.

Thirteen years later, in 2009, Congress passed the Omnibus Public Land Management Act to create the Red Cliffs National Conservation Area ("Red Cliffs NCA") in south-central Washington County, which overlaps with the Reserve.  *See generally* 16 U.S.C. § 7202; Pub. L. No. 111-11, 123 Stat. 991 (2009).  Congress's goals for the area were two-fold: to "conserve, protect, and enhance for the benefit and enjoyment of present and future generations the ecological, scenic, wildlife, recreational, cultural, historical, natural, educational, and scientific resources of" the area, and to "protect each species" that is located the Red Cliffs NCA and listed as threatened or endangered under the ESA.  Pub. L. No. 111-11, Subtitle O, § 1974, 123 Stat. 1081, codified at 16 U.S.C. § 460wwww.  Congress tasked the U.S. Bureau of Land Management ("BLM") with management of the Red Cliffs NCA, and, in 2016, the agency approved two resource management plans to serve as  blueprints for the area's conservation: the Red Cliffs Resource Management Plan

---

1       In 1994, FWS designated 6.4 million acres of critical habitat under the ESA for the desert tortoise, including critical habitat "recovery units," portions of which are in Washington County. *See* Am. Compl.  ¶ 80; Mot. at 6 n.2.

2       "Take" is broadly defined to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19); *see also* 50 C.F.R. § 17.3(c).

and the St. George Field Office Resource Management Plan.  *See* Notice, 81 Fed Reg. 93707 (Dec. 21, 2016).   But Congress also charged other governmental entities with an additional objective in the Omnibus Public Land Management Act: to "develop a comprehensive travel management plan for the land managed by" BLM within Washington County.   Pub. L. 111-11, Subtitle O, § 1977(b)(1), 123 Stat. 1089.

In pursuit of this latter objective, the Utah Department of Transportation ("UDOT") applied to BLM for a grant of a right-of-way through a portion of the Red Cliffs NCA in September 2018. Mot. at 9.  The state Department of Transportation submitted its application as an initial step to secure approval for the construction of a four-lane highway that would be approximately five miles long (the "Northern Corridor highway"), and would cross lands owned by the federal government, the State of Utah, the State of Utah School and Institutional Trust Lands Administration, and several private parties.  *Id.*  The application also informed BLM that the issuance of the right-of-way would likely require amendments to the previously adopted Red Cliffs and St. George Resource Management Plans, and that coordination with FWS would be necessary to assess the project's effects on the threatened Mojave Desert tortoise.  *Id.*

BLM and FWS agreed with UDOT, and on December 5, 2019, the agencies published a notice of intent to prepare a joint environmental impact statement under the National Environmental Protection Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*  *See* Notice, 84 Fed Reg. 66692 (Dec. 5, 2019).   The notice announced the agencies' intent to evaluate the environmental impacts of UDOT's right-of-way application, potential amendments to the Red Cliffs and St. George Field Office Resource Management Plans, and the issuance of another incidental take permit to Washington County authorizing it to "take" desert tortoises.  *Id.* at 66693. The notice also advised that BLM would meet its obligations under section 106 of the National

Historic Preservation Act ("NHPA"), 54 U.S.C. §§ 300101 *et seq.*, as part of the NEPA review process.  *Id.*; *see also* 36 C.F.R. § 800.2(d)(3) (detailing the process).  Section 106 of the NHPA obligates the government to conduct a review of all permitted projects that will impact sites listed on, or eligible for listing on, the National Register of Historic Places.  *See* 54 U.S.C. § 306108; 36 C.F.R. pt. 800.

BLM and FWS issued a Draft Environmental Impact Statement in June 2020, generating over 15,500 public comments.  Am. Compl. ¶¶ 106, 111.  This period of public comment coincided with the dire occurrence of wildfires that "burned nearly 15,000 acres within the Red Cliffs NCA," consuming "almost 9,000 acres of desert tortoise critical habitat, including more than 2,500 previously unburned acres of critical habitat."  Am. Compl. ¶ 112.  Plaintiffs requested that BLM and FWS pause their environmental review in light of those developments, but the agencies declined to do so.  Am. Compl. ¶ 116.

On November 12, 2020, BLM and FWS issued their joint Final Environmental Impact Statement assessing: UDOT's proposed right-of-way; an amended habitat conservation plan to govern the Reserve adopted and approved by Washington County in October 2020; a new incidental take permit for Washington County; and proposed resource management plan amendments to govern management of the Red Cliffs NCA.  *See* U.S. DEP'T OF INTERIOR ET AL., FINAL ENV'T IMPACT STATEMENT TO CONSIDER A HIGHWAY RIGHT-OF-WAY, AM. HABITAT CONSERVATION PLAN AND ISSUANCE OF AN INCIDENTAL TAKE PERMIT FOR THE MOJAVE DESERT TORTOISE, AND PROPOSED RES. MGMT. PLAN AMENDMENTS, WASHINGTON COUNTY, UT (Nov. 2020) ("FEIS"), *available at* https://eplanning.blm.gov/eplanning-ui/project/1502103/570. Among other things, the Final Environmental Impact Statement concluded that issuing the right-of-way to UDOT would "directly harm 299 acres of vegetation and indirectly harm up to 3,991

acres" within the Red Cliffs NCA and Reserve, Am. Compl. ¶ 118; FEIS (Vol. 2) at 3-14–3-15 tbl. 3.2.2, and that the proposed Northern Corridor highway would "cause the direct loss of 275 acres of tortoise habitat within the [Reserve] and indirectly impact 2,333 acres of habitat," as well as "permanently eliminate at least 276 acres of desert tortoise critical habitat." Am. Compl. ¶ 119; FEIS (Vol. 2) at 3-75 tbl.3.5.11, 3-78 tbl. 3.5-12. Plaintiffs allege that while the agencies acknowledged the recent fires in the Red Cliffs NCA, they "provided no data on the scale, scope, extent and impacts of these fires; burn severity and mapping; desert tortoises killed, injured, or translocated," or other allegedly necessary information to fully evaluate the fires' ecological impact. Am. Compl. ¶ 127.

The Final Environment Impact Statement also included information about the Northern Corridor highway's anticipated adverse effects on cultural and historical resources, as required by Section 106 of the NHPA. BLM's analysis, in consultation with American Indian Tribes and Bands, the Utah State Historic Preservation Office, and others, revealed that "[c]onstruction of the Northern Corridor highway . . . would result in adverse effects to historic properties . . . and would directly impact cultural resources under NEPA, causing permanent or long-term effects to NHPA-eligible archaeological sites, through physical damage or alteration resulting in the loss of information important in history or prehistory . . . ." FEIS (Vol. 2) at 3-151. But BLM did not develop alternatives or bind the parties to measures to mitigate the anticipated adverse impacts at that time. Instead, the agency stated that if it decided to issue a right-of-way to UDOT:

> American Indian Tribes and other consulting parties would have the opportunity to participate in the development of a Memorandum of Agreement that would address the resolution of adverse effects to historic properties, based on the implementation of approved treatments prior to BLM's issuance of a Notice to Proceed to UDOT for construction.

*Id.* at 4-2.

6

On January 12, 2021, the Fish and Wildlife Service issued two related biological opinions: one for Washington County's amended habitation conservation plan, and one for the Northern Corridor highway project.  *See* Mem. from Ariz. Field Supervisor, Ecological Servs., U.S. Fish & Wildlife Servs., to Regional Director, U.S. Fish & Wildlife Servs., Interior Regions 5 & 7 (Jan. 12, 2021), *available at* https://www.fws.gov/sites/default/files/documents/Final Wash County HCP BiOp.pdf ("HCP Opinion"); Memorandum from Yvette Converse, Utah Field Supervisor, Ecological Services, U.S. Fish & Wildlife Servs., to Utah State Director, Bureau of Land Mgmt., Utah State Office (Jan. 12, 2021), *available at* https://www.fws.gov/sites/default/files/documents/Northern Corridor Final Biological Opinion.pdf ("Northern Corridor Opinion).  FWS concluded that "implementing the [amended habitat conservation plan] will not jeopardize the continued existence of Mojave desert tortoise or adversely modify its critical habitat."  Am. Compl. ¶ 148; *see also* HCP Opinion at 67–8. According to plaintiffs, FWS "based this conclusion on its finding that Washington County's conservation measures . . . would completely offset the [anticipated] take of tortoise by the Northern Corridor Highway and the [amended] Habitat Conservation Plan."  *Id.*

Based on these findings, BLM and FWS both issued decisions the following day.  *See* Notice, 86 Fed. Reg. 4115 (Jan. 15, 2021).  The Bureau of Land Management published a Record of Decision adopting the Resource Management Plan Amendments and approving the issuance of the right-of-way for the Northern Corridor Highway to UDOT.   BUREAU OF LAND MGMT., REC. OF DECISION AND APPROVED RESOURCE MGMT. PLAN AMENDMENTS FOR THE N. CORRIDOR RIGHT-OF-WAY, RED CLIFFS NAT'L CONSERVATION AREA RES. MGMT. PLAN, AND ST. GEORGE FIELD OFFICE RES. MGMT. PLAN (Jan. 2021), *available at* https://eplanning.blm.gov/public_projects/1502103/200341977/20034449/250040647/Record of

Case 1:21-cv-01506-ABJ   Document 81   Filed 11/16/23   Page 8 of 17

Decision and Approved RMP Amendments_BLM_2021.01.13.pdf. ("BLM ROD"). The Record of Decision did not, however, signal the completion of the NHPA review process. It instead indicated that interested parties would have "the opportunity to participate in the development of a Memorandum of Agreement that would address the resolution of adverse effects to historic properties, based on the implementation of approved treatments, prior to the BLM's issuance of a Notice to Proceed to UDOT for construction." *Id.* at 26. The Fish and Wildlife Service, for its part, published a Record of Decision announcing a decision to issue another incidental take permit to Washington County. *See* U.S. FISH & WILDLIFE SERV., FINDINGS & RECOMMENDATIONS, (Jan. 13, 2021), *available at* https://www.fws.gov/sites/default/files/documents/20210113_final_Findings_Wash Co.pdf. The right-of-way and ITP were issued the same day. Mot. at 9. A Notice to Proceed construction of the Northern Corridor highway has not yet issued. *Id.*

On June 3, 2021 plaintiffs filed this action against the United States Department of Interior, Bureau of Land Management, and Fish and Wildlife Service, *see* Compl., and they later amended their complaint. *See* Am. Compl. The Utah Department of Transportation and Washington County, Utah both sought and were granted leave to intervene as defendants in the case. *See* Order [Dkt. # 15].

Plaintiffs' amended complaint consists of nine claims for relief, alleging:

I.  The Federal Defendants' approval and grant of the Northern Corridor right-of-way and adoption of the Red Cliffs Management Plan amendments was arbitrary, capricious, an abuse of discretion and not in accordance with the **Omnibus Public Land Management Act** and the APA;

II. The Federal Defendants' approval and grant of the Northern Corridor right-of-way and adoption of the Red Cliffs Management Plan amendments was arbitrary, capricious, an abuse of discretion and not in accordance with the **Land and Water Conservation Fund Act** and the APA;

8

III.   The Federal Defendants' approval and grant of the Northern Corridor right-of-way and adoption of the Red Cliffs Management Plan amendments  was arbitrary, capricious, an abuse of discretion and not in accordance with the **National Environmental Protection Act** and the APA;

IV.   The Federal Defendants' failure to prepare a supplemental environmental impact statement considering the impacts of wildfires on resources within the Red Cliffs NCA was arbitrary, capricious, an abuse of discretion and not in accordance with the **National Environmental Protection Act** and the APA;

IV.   The Federal Defendants' approval and grant of the Northern Corridor right-of-way and adoption of the Red Cliffs Management Plan amendments was arbitrary, capricious, an abuse of discretion and not in accordance with the **National Historic Preservation Act** and the APA;

V.   The Fish and Wildlife Service's approval and issuance of the biological opinion and incidental take statement for the 2020 Habitat Conservation Plan was arbitrary, capricious, an abuse of discretion and not in accordance with the **Environmental Safety Act** and the APA;

VI.   The Fish and Wildlife Service's approval and issuance of the biological opinion and incidental take statement for the Northern Corridor highway was arbitrary, capricious, an abuse of discretion and not in accordance with the **Environmental Safety Act** and the APA;

VII.   The Fish and Wildlife Service's approval and issuance of the biological opinion and incidental take permit was arbitrary, capricious, an abuse of discretion and not in accordance with the **Environmental Safety Act** and the APA; and

VIII.   The Bureau of Land Management's reliance on Fish and Wildlife's allegedly flawed biological opinions jeopardizes the survival and recovery of the Mojave desert tortoise, in violation of the **Environmental Safety Act**.

Am. Compl. ¶¶ 168–213.

While there are cross motions for summary judgment on the merits pending, Federal Defendants have now interrupted that process. They moved the Court to seek:

9

(1) voluntary remand with vacatur of the Bureau of Land Management's right-of-way decision and grant to the Utah Department of Transportation;

(2) voluntary remand without vacatur of the Bureau of Land Management's approval of the amended Red Cliffs NCA and St. George Field Office resource management plants; and

(3) voluntary remand without vacatur of the Mojave desert tortoise incidental take permit issued to Washington County, as well as the associated biological opinions.

Mot. at 1.  Plaintiffs have endorsed the proposal, *see* Pls.' Resp, but Intervenor-Defendants object. *See* UDOT Opp; Cnty Opp.  The matter has been fully briefed.  *See* Reply in Supp. of Mot. [Dkt. # 68] ("Reply"); Intervenor-Def. Utah Dep't of Transp. Sur-Reply to Mot. [Dkt. # 78]; Sur-Reply of Intervenor-Def. Washington Cnty, Utah [Dkt. # 79].

## LEGAL STANDARD

Courts in this Circuit "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018), quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017) (emphasis omitted).  An agency need not "confess error or impropriety in order to obtain a voluntary remand" but "ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."  *Limnia*, 857 F.3d at 387. "Even in the absence of new evidence or an intervening event, . . . courts retain the discretion to remand an agency decision when an agency has raised 'substantial and legitimate concerns' in support of remand." *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010), quoting *Sierra Club v. Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008).

With respect to a motion to vacate, though, the standard differs.  "[I]n deciding whether to vacate a flawed agency action, the district court should be guided by two principal factors: (1) the

10

seriousness of the . . . deficiencies of the action, that is, how likely it is the [agency] will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

## ANALYSIS

Federal Defendants moved for an order remanding the challenged decisions, explaining that they have "concluded that BLM failed to properly comply with the [National Historic Preservation Act] before issuing the [right-of-way]," Mot. at 15, and that they have "identified substantial and legitimate concerns associated with the underlying National Environmental Protection Act analysis related to the impacts of wildfires on both the Mojave Desert and the desert tortoise." Mot. at 18. They ask the Court to remand all of the decisions involved so that the agencies can engage in supplemental environmental analyses and review the decisions anew. *Id.* at 16, 18–19. In addition, they ask the Court to vacate the right-of-way based on what they assert are clear legal deficiencies in the NHPA process, in particular, the fact that the Bureau of Land Management granted the right-of-way without first securing a binding commitment that UDOT would mitigate the predicted adverse effects on cultural and historic resources. *Id.* at 15–17. Plaintiffs support the government's request. *See* Pls.' Resp. at 20.

The Intervenor-Defendants object strenuously to the proposed vacatur, and they have opposed the motion in its entirety. UDOT Opp. at 1; County's Opp. at 1. They maintain that there was no violation of NHPA in BLM's failure to insist upon a binding commitment to mitigate impacts on historical and cultural resources before the right-of-way issued, and that if any error

did occur, the consequences are minimal.  UDOT Opp. at 20.[3]  They also oppose a remand, arguing that BLM's Final Environmental Impact Statement "thoroughly analyzed the frequency and extent of wildfires, the effect of non-native species, and the impacts on the desert tortoise."  *Id.* at 16. Thus, according to Intervenor-Defendants, there is no more work to be done.  *Id.*  at 19.

## I.      Remand is appropriate.

A motion for remand may be refused if an agency's request is frivolous or in bad faith.  *See Lutheran Church–Mo. Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying "novel, last second" request for remand based not on a confession of error, but a non-binding prospective policy statement).  But here, the Court cannot find that the Federal Defendants' stated concerns about the set of decisions issued in the wake of the wildfires – in the face of their own analyses of the likely environmental effects on the Red Cliffs NCA in general, and the Mojave desert tortoise in particular  – as well the impact on historical properties in the region, are not being advanced in good faith.

The government's contention that insufficient attention was given to significant wildfire activity in the Red Cliffs NCA is substantial and legitimate.  The devastating wildfires allegedly given short shrift in the Federal Environmental Impact Statement  – the effects of which may not have immediately been identifiable – occurred in the approximately five months between publication of the Draft Environmental Impact Statement and the release of the final document. The Federal Defendants propose to take action upon remand: they intend to conduct additional environmental analysis in the form of a Supplemental Environmental Impact Statement, which they plan to complete by November 2024, and to solicit additional comments from the parties and

---

3      Washington County has joined the Utah Department of Transportation's opposition brief and "relies on the State's arguments with respect to BLM's determinations that are subject to the Motion for Voluntary Remand."  Cnty Opp. at 1.

the public, including Intervenor-Defendants.  *See* Mot. at 16; Decl. of Gregory J. Sheehan [Dkt. # 53-1] ¶ 12.  This falls squarely within the sort of scenario when remand is warranted, and the Court will exercise its discretion to grant the motion in recognition of the fact that the Federal Defendants "intend[] to revisit the challenged agency decision on review."  *Limnia*, 857 F.3d at 381.[4]

## II.   **The request for vacatur will be denied**.

The government's request to vacate the right-of-way, however, is more problematical. The D.C. Circuit has explained that the decision whether or not to vacate requires an assessment of "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–151 (D.C. Cir. 1993).

The parties agree that to vacate a final agency decision, a court must conclude that the agency made a legal error.  *See* Mot. at 14; UDOT Opp. at 3–4; Reply at 7. Indeed, the Administrative Procedure Act only authorizes reviewing a court to "hold unlawful and set aside agency action, findings, and conclusions *found* to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A) (emphasis added).

Here, out of all of the alleged legal deficiencies in the multi-faceted decision-making process, the federal defendants identify and concede only one legal error, "associated with NHPA compliance."  Mot. at 17. They state:

---

4      The fact that Federal Defendants have not committed to specifically addressing each of plaintiffs' claims on remand does not bar remand.  The suitability of voluntary remand hinges on whether the agency has committed to revisiting "the original agency decision on review," not whether the agency will address every manner in which a party claims that decision was erroneous. *Limnia*, 857 F.3d at 386.

The NHPA "Section 106" process requires that BLM evaluate whether there are impacts to historical or cultural resources. Furthermore, if there are such impacts, the NHPA's implementing regulations require BLM to make a binding commitment to avoid, minimize, or mitigate the adverse effects in either the ROD or a memorandum of agreement with either the Advisory Council or the Utah State Historic Preservation Office. BLM has now concluded that it was legal error for it to issue the ROW without first determining those impacts and, if required, without first making those binding commitments.

*Id.* at 15 (citations omitted).  Since the agency reported on impacts to historical resources in the Final Environmental Impact Statement, *see* FEIS (Vol. 2) § 3.14, it is the failure to secure binding commitments to ameliorate them before issuing the Record of Decision that is being offered up as the legal error in question.  This is a slender reed to hold the weight of vacating the entire right-of-way decision, particularly when the obvious gravamen of the complaint is the agencies' failure to take appropriate steps to protect the environment and a threatened species, as opposed to historic properties.

The overwhelming majority of documents that comprise the 100,000 pages in the Administrative Record bear on the conservation issue.  Only one of the nine counts in the amended complaint relates to NHPA compliance; only 12 of the 102 paragraphs in the factual background section of the pleading touch on that subject.  Not one of the plaintiffs is a historic preservation organization, and the Tribe alleged to have been not fully consulted, *see* Am. Compl. ¶¶ 136–139, is not a party to the case.

Also, while BLM's plan to reconsider its approach to remediating impacts on historic properties and cultural resources supplies another non-trivial basis for a remand, it is not clear that the decision to defer calling for the necessary binding commitments until construction constitutes legal error under Circuit precedent.

Section 106 of the National Historic Preservation Act provides that "prior to the issuance of any license," the head of any Federal department having authority to license any "undertaking"

"shall take into account the effect of the undertaking on any historic property."  54 U.S.C. §
306108.  The agency has promulgated rules to guide the implementation of this requirement, and
they are found within 36 C.F.R. §800.8, entitled "Coordination with the National Environmental
Policy Act."  The portion of the regulation that addresses the use of the NEPA process for section
106 purposes provides:

> If the agency official has found, during the preparation of an . . . EIS that the effects
> of an undertaking on historic properties are adverse, the agency official shall
> develop measures in the EA, [draft] EIS, or EIS to avoid, minimize, or mitigate
> such effects. . . . The agency official's responsibilities under section 106 and the
> procedures in this subpart shall then be satisfied when *either*:
>
> (i)      A binding commitment to such proposed measures is incorporated in:
>
> (A) The ROD, if such measures were proposed in a DEIS or EIS; *or*
>
> (B) An MOA drafted in compliance with §800.6(c) . . . .

36 CFR §800.8(c)(4) (emphasis added).

The parties all recognize that BLM's Record of Decision and the right-of-way grant call
for more consultation with affected Tribes and the execution of an memorandum of understanding
before the Notice to Proceed may issue.  *See* FEIS (Vol. 2) at 4-2 (ROD requiring "the opportunity
to participate in the development of a Memorandum of Agreement that would address the
resolution of adverse effects to historic properties, based on the implementation of approved
treatments, prior to the BLM's issuance of a Notice to Proceed to UDOT for construction.").
UDOT takes the position that the Notice to Proceed is the "license" referred to in section 106, and
therefore, BLM's stated intention to call for the binding commitments before the Notice is issued
comports with law.  *See* UDOT Opp. at 12–13, citing *Mid States Coal. for Progress v. Surface
Transp. Bd.*, 345 F.3d 520, 554 (8th Cir. 2003); *Appalachian Voices v. Fed. Energy Regul.
Comm'n*, No. 17-1271, 2019 WL 847199, at *3 (D.C. Cir. Feb. 19, 2019).  The government
attempts to brush these authorities away by characterizing the Record of Decision as the "license,"

but it relies on a district court opinion that deals with the definition of "undertaking" under section 106, not "license." *See* Reply at 5, citing *Battle Mountain Band v. U.S. Bureau of Land Mgmt.*, No. 3:16-cv-0268, 2016 WL 4497756, at *7 (D. Nev. Aug. 26, 2016).

The Court agrees with the government that section 106 obligations were triggered by the Record of Decision approving the right-of-way. But that does not answer the question of when they need to be fulfilled, and BLM's approach appears to be in accordance with Circuit precedent. *See Appalachian Voices*, 2019 WL 847199 at *3 ("Petitioners' challenges brought under the National Historic Preservation Act (NHPA) likewise lack merit. FERC did not violate the NHPA by issuing the Certificate Order subject to the condition that it would complete the NHPA section 106 consultation process prior to construction."), citing *City of Grapevine v. Dep't of Transp.*, 17 F.3d 1502, 1509 (D.C. Cir. 1994) (FAA did not violate the NHPA by approving a construction project before completion of the section 106 process where approval "was expressly conditioned upon completion of [that] process").

Moreover, vacatur to cure a potential error in NHPA compliance would be inappropriate at this stage. Any evaluation of the agency's compliance with the statute's broadly worded directives, *see* 54 U.S.C. § 306108 (agency officials "shall take into account the effect of the undertaking on *any* historic property") (emphasis added), and the set of standards and procedures included in the regulation, *see* 36 C.F.R. §800.8(c)(1), cannot be accomplished without in-depth consideration of the Administrative Record, including the materials received from consulting American Indian Tribes and Bands, other interested parties, and the Advisory Council on Historic Preservation, guided by the full summary judgment briefing which was suspended when the instant motion was filed. Min. Order (June 5, 2023).

In short, the Court cannot find the necessary legal error that would make vacatur an option at this time based on the materials filed in support of the motion.  And since, in accordance with the terms of the Record of Decision and right-of-way, construction of the Northern Corridor highway cannot begin unless and until the Notice to Proceed issues, *see* Mot. at 9, vacatur is not necessary to ensure that no additional harm can befall the plaintiffs, the tortoises, or the historic features in the region while the remand is underway.

## CONCLUSION

For these reasons, Federal Defendants' motion for remand and partial vacatur will be **GRANTED IN PART** and **DENIED IN PART**.  The January 13, 2021 grant of right-of-way issued to Defendant Utah Department of Transportation, incidental take permit issued to Defendant Washington County, Utah, biological opinions related to the Northern Corridor highway and incidental take permit, amendments to the Red Cliffs National Conservation Area and St. George Field Office Resource Management Plans, and their associated Records of Decision will be **REMANDED** to their respective agencies for reconsideration.

This outcome preserves the opportunity for plaintiffs, Federal Defendants, and Intervenor-Defendants to address their concerns through agency processes, simultaneously conserving this Court's resources and potentially avoiding unnecessary litigation.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 16, 2023

17